The Honorable Russ Hunt State Representative P.O. Box 200 Searcy, AR 72145-0200
Dear Representative Hunt:
This is in response to your request for an opinion concerning billing practices in connection with managed care plans. You have outlined a scenario involving the efforts of a particular physicians' group to obtain payment for services that its physicians provide in reviewing x-rays that have been forwarded by either a hospital or another physician. The issue focuses on A.C.A. § 23-76-118 (b) (3) (Supp. 1999)[1]
which, you state, has been cited by a health maintenance organization in a letter sent to the physicians group with an admonition regarding billing practices.
Your specific question in this regard is as follows:
 Will an inadvertent or unintentional violation of section (b) (3) of § 23-76-118 result in adverse action being taken against the medical provider or collection agency?
RESPONSE
This question cannot be answered in the limited format of an Attorney General opinion. Any determination regarding possible enforcement actions, whether by this office or the State Insurance Department, would necessarily be made on an individual basis, with reference to all of the particular surrounding facts and circumstances. This is simply not a matter that falls within the scope of an official opinion. I cannot speculate as to what action this office might contemplate, given the fact-specific nature of the question. Nor can I speak for the Insurance Commissioner as to those matters falling within his jurisdiction.
With regard to the substance of A.C.A. § 23-76-118 (b) (see text at n. 1, supra), it seems clear that the intent of this provision is to prevent health care providers from billing health care plan subscribers or enrollees for amounts that are owed by the Health Maintenance Organization ("HMO"). Please note that I have enclosed a copy of a directive issued by the State Insurance Commissioner addressing this prohibition against so-called "balance billing." (Directive No. 1-98, dated January 9, 1998). The Commissioner has stated in this regard that he will enforce this prohibition against both insurers and providers to protect consumers against overreaching by either party. Again, however, the decision whether to take enforcement action in any given instance, and the specific nature of such action, would depend upon the particular facts.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Subsection (b) of § 23-76-118 states in full as follows:
 (b)(1) HOLD HARMLESS. Every contract between a health maintenance organization and a participating provider of health care services shall be in writing and shall set forth that in the event the health maintenance organization fails to pay for health care services as set forth in the contract, the subscriber or enrollee shall not be liable to the provider for any sums owed by the health maintenance organization.
 (2) In the event that the participating provider contract has not been reduced to writing as required by this subsection or that the contract fails to contain the required prohibition, the participating provider shall not collect or attempt to collect from the subscriber or enrollee sums owed by the health maintenance organization.
 (3) No participating provider, or the provider's agent, trustee or assignee may maintain an action at law against a subscriber or enrollee to collect sums owed by the health maintenance organization.
 (4) `Participating provider' means a provider as defined in § 23-76-102
who, under an express or implied contract with the health maintenance organization or with its contractor or subcontractor, has agreed to provide health care services to enrollees with an expectation of receiving payment, other than copayment or deductible, directly or indirectly from the health maintenance organization.